Number 152456 and number 152462, United States v. Diego Fernandez-Santos. Good morning, Your Honor. First of all, I would like to reserve three minutes for rebuttal, if I may. Yes. Thank you, Your Honor. This case arises in a courtroom of a judge that I respect greatly. But I feel that on June 10, 2014, when he was handling the Rule 11, the change of plea on a straight plea of a defendant, the court failed to take into account everything that has to be done under Rule 11. This was compounded by the inaction of the United States. And also, when the government gives the version on how they would have proven the crime, it was completely inadequate. If you look on the record that we have submitted on the second addendum, and I believe it's pages 164 to 167, you will see in those pages how the court explained what the person was pleading guilty to. And also, you will see on pages 172 and 173, the government's version. And you will see that Mr. Fernandez was not informed exactly on what he was charged and on the burden that the government had. As to the government, when the government states what they would have proven at trial, they failed to mention that if they had a chemist, if the chemist was going to come, what the result of the chemical analysis was, etc. Of course, we know that the result of the chemical analysis long later, when we held the hearing on the withdrawal of the guilty plea that was timely filed by the defendant, you will see there that it was me who brought that with the probation officer, Mr. Casanova, to establish that it was .02 grams. And when I asked him what .02 grams was, I recall that the judge said, well, .02 grams is exactly that, .02 grams. But the court, Mr. Casanova explained that it was this much, because .02 grams was not even enough to be used for personal use. And that's the only evidence of the amounts of drug that we have. And that's important, because in this case, there were three charges. One is a felony possession, and I have to admit and be candid with the court that in that count, I have problems as a defense attorney in the sense that it's hard for me to explain if there was a gun there, and he's a felon, and he claims to be the one possessing it. Basically, he's accepting that count. Now, count one and count two are completely different. Count one is the possession of drugs with intent to distribute it. And the 924C follows through. You must have a weapon to protect a deal. But if it's for personal use, you cannot. I don't understand what specifically you're saying the court failed to communicate to your client. Well, when the court is – remember, this is a straight plea. This is not a plea agreement. There is no plea agreement. Normally, the court, when it's handling the change of plea, is also following the plea agreement and asking questions. And everything has been explained, and it's there, and it's written. The court asked if he had received a copy of the indictment and had discussed it with his attorney. Isn't that correct? Yes. And the court also asked if he agreed with the government's version of the facts. But that version of the facts given by the United States, in this case, if you look at it, it says – all she says is, and there was a detectable amount of drugs. So you have to tie that in with the report. That's .02. That's a detectable amount, but that's not sufficient. That's not enough for a person to be selling drugs. .02 is not even enough for your personal consumption. It's even less. Yeah, but there was more than that, of course. There were the two eight-ball packages. There was a lot of cash. There was the firearm. There was the lack of any evidence that he was using himself, and there were two or three more things in addition to that. So why couldn't a jury have found that? There was an inference that he had flushed the drugs down the toilet before the police entered the apartment because there was a delay of seven or eight minutes before they could gain entry. And there were plastic bags marked with drug insignia. But, Your Honor, he accepted that he had flushed three small bags that had less than one gram that were for his personal consumption, and that's in the record, and I leave it for you to look in the record. It's there. He accepted that he had those three and that he got rid of those. The ones that the government calls the eight-ball, they even find traces in those. How can you say that they contain X amount of drugs? We're making the court assume that there was X amount of drugs in those packages when all that they were able to obtain was .02 grams of cocaine. The evidence there is clear, and if you look at that. And then the other point I just wanted to make is that the withdrawal, I'm saying that it was timely. What is important here is if you know and if you recall from the record, on June 10, this defendant had an attorney, and he was immediately taken out of Puerto Rico to Georgia just because of overcrowding that we have in Puerto Rico, and he didn't get to see or he didn't talk to anyone in Puerto Rico until the probation officer made a video conference with him in September 8, and that's the first opportunity that the defendant has to explain what his problems are, and he explains that to the probation officer because on a stage so important like the presentence report, the attorney was not even there. He arrived late. He arrived after half of the interview had been conducted, and he didn't want to talk to his attorney, and his attorney, what does he do? He files a motion to withdraw on September 10, a couple days after. There, the judge appoints me as an intermediary or mediator to see if I can get them to talk again, and what do I do? I make a video conference, and I ask the attorney to be there.  I held that conference. Later on, I spoke with the attorney and told him what had transpired. Again, it's exactly the same he had told the probation officer. You've reserved some time. You've reserved some time. Okay, thank you. I'll continue with it. Good morning, Your Honors. May it please the Court. My name is Maenon Schwartz representing the United States. First, in response to the complaints about the Rule 11 hearing, I would just like to point Your Honors to the record. This is the first volume of defendant's appendix at page 95, and he says, Your Honor, I have no doubt that the Court conducted the Rule 11 hearing the way it does every time. He, meaning my client, is not saying that the Court did something wrong or that the United States did something wrong. Obviously, that story has changed somewhat today, but we argued in our brief that his arguments regarding the Rule 11 hearing were waived, and we ask Your Honors to uphold that waiver. Moving on to his arguments regarding the intent to distribute, we'd like to emphasize that the intent to distribute is not reliant solely on drug amount. This Court, in its opinions, has said there are many factors that a jury can consider and that this Court can consider to find the requisite intent to distribute, to uphold the factual basis for a defendant's plea. In this particular case, Your Honors mentioned some of the evidence that we have. There was the packaging, the baggies with the drug logo. There was extensive drug paraphernalia. There were scales. There was cutting agents. There's no evidence that the defendant had used drugs personally. The PSR pointed out that he has no history of drug use or treatment or substance abuse. There was also the weapon, of course, that was found, the gun that was found behind the washing machine, on top of which was where the eight-ball wrapper and much of the drug paraphernalia was found. So the gun was within inches to maybe a foot or two of the drugs. And finally, of course, the last factor is the history of drug distribution. Boy, wasn't there cash found? There was some cash. I think it was a fairly small amount in the hundreds, and that was in the bedroom. In the bedroom, also, there were several prepaid calling cards, and the jury heard evidence that those are often used by drug dealers because it makes the calls more difficult to trace. Multiple cell phones. And then, as I was saying, the history of drug distribution. This defendant, just a couple of years prior, had been convicted of possessing drugs with the intent to distribute, and he was, in fact, still on supervised release for that crime at the time he committed this one. If your honors have any questions about the fair or just reason for withdrawal that does not exist here, I'm happy to answer them. And if not, I'd like to touch briefly on the other argument that he makes regarding the consecutive nature of the revocation sentence. The most important evidence that the court properly understood its discretion to impose a revocation sentence, concurrent or consecutive, is that he made a proper statement of the law on the record after consulting with the probation officer. And that's at volume two of the appendix at 149. He said, the revocation need not be consecutive to the drug count. And that alone should be sufficient for this court to be reassured that he understood that it didn't have to be consecutive, but that in the exercise of his discretion, he was choosing to make the revocation sentence consecutive. Moreover, he demonstrated his understanding that the guidelines were not mandatory because he, in fact, went above the guidelines in the choice of the amount of the revocation sentence. The guidelines were 12 to 18 months, and he imposed a revocation sentence of 24 months. That was the statutory maximum, which also shows he was not at all inclined to go lower. There's no indication that he would have imposed a concurrent sentence regardless. If your honors don't have any further questions, we will submit on the briefs. I just wanted to finish what I have. Then on October, on or around October the 8th, the defendant was brought to Puerto Rico, and we visited. And when I say we, both attorneys went to visit the defendant at jail on or about October 22nd. Your honor, from there, it was clear that he didn't want to talk to his attorney up to that moment. And the defendant, I mean, defendant's attorney filed a motion to withdraw on November the 3rd. At that moment, I'm left as the attorney. I received the file, I received the evidence, and I have a defendant who's asking me to file some motions. I have to prepare and to read the file to see if those motions have any merit. But at the same time, I'm filing a motion to the court explaining personal problems that I had. I filed a third motion at the end of November, and I mentioned that I had already met with Mr. Acevedo, who was one of the assistant U.S. attorneys handling the case. And he was amenable to some of the things that I had said, but we had to go to his supervisor. And we went to his supervisor, Mr. Capo, in mid-December. Nothing came out of that hearing. What I had proposed was rejected. And then I filed a motion to withdraw on or about January 11th of 2015. And the court then sets a hearing, and a hearing was held in January 22nd. After that hearing, Your Honor, we were requested to file simultaneous briefs, which we did. If you look at the filing, it's a difference of, like, less than 30 seconds apart. Because I was waiting for the government to file mine. And as soon as I saw it, I just hit the send button. And then in October of 2015, the decision came. And, of course, it was against my contention. I'm saying that it's weighted heavily against the defendant, against the appellant. It's weighted heavily, the time, because they're using the time from June 10th. I don't think that is correct. I don't think that's fair for a person that was basically without an attorney, because they had no communication whatsoever. And they never had it, and I wasn't able to establish one between the two. On the contrary, the more that I tried to talk to the defendant, the worse it got. And the more that he saw the evidence later on, the madder he got. And, Your Honor, that's why I'm saying it's timely. I just wanted to mention something to assist the counsel. Rule 11 is not to be taken lightly, and this court has never taken it lightly. And we have many opinions that we have received, and just as recent as Delgado Lopez in September of this year. And it's a different case because it's a person that went to trial, was found guilty. Thank you. Thank you.